At a court of Oyer and Terminer held at this term, Reuben Newcomb was indicted for the murder in the first degree of Ezekiel C. Cook, and was tried in the said court on the 28th day of December following.
The deceased had been an adjoining neighbor of the prisoner and having become very much offended with him had several times declared to others his intention to whip him, and his desire to kill him, to which the prisoner had rejoined on the same being communicated to him by others, that he would defend himself, if he was attacked by him, and that he would consider it as proper to kill such a man if attacked by him, as to kill a mad dog under *Page 67 
the like circumstances, and from that time carried a six barrel revolver about his person. The deceased on the day of the homicide was in his store at Blackiston's Cross Roads, about the hour of sunset when he was seen by the only other person then in it to go around to a drawer under the counter and take a pistol from it and put it in his pocket, and said he was going to shut up his store, and closed the windows, the prisoner at the time standing in his front yard some forty feet from him, at whom he looked and then said to the person still in the store, but who was in the act of leaving it, that he would "kill that man, if he was the last man in the world, and a d____d nigger too." Just then the prisoner passed the store, walking down the street, and soon afterward the deceased closed his store and walked rapidly in the same direction on the opposite side of it, until after he had overtaken and passed him, with a pistol in his hand when he crossed over to the same side in advance of him, and quickly turning stood face to face a few yards in front of him. Both halted, and the deceased was immediately seen to throw up his right arm and hand towards the prisoner, and a pistol cap was both seen and heard to explode between them. The prisoner then discharged four barrels of his revolver in quick succession at the deceased who after taking a few steps tottered and fell in the street, and as the prisoner passed him in the act of falling he was heard to say to him, "I told you, you would catch it!" A single barrelled pistol was found on the ground by the side of the deceased when he was taken from the street, and he died within fifteen minutes after he was removed from it to his house. One bullet passed through his body from the right to his left side.
It was not contended on behalf of the prosecution that the case could constitute in contemplation of law on the facts proved any offense above the grade of manslaughter, while it is insisted by the counsel for the prisoner that it is a case of excusable homicide, or of killing in self-defense. In this case there had been no previous combat or fight between the prisoner and deceased, but it seems a deliberate and violent assault was made by the deceased upon the prisoner on the public highway with a deadly weapon, or a pistol, and that the latter at once resorted to a similar weapon to repel the attack and to defend his life, as he alleges, and shot and killed the deceased. In order to reduce homicide in self-defense to such a degree as to render it entirely excusable or justifiable in law, the jury must be satisfied after considering all the evidence in this case, that unless the prisoner had killed or shot down Ezekiel C. Cook, as he did in this case, he was in imminent and manifest danger of losing his own life, or of suffering great bodily harm at his hands, and that it was *Page 70 
done not of malice, but of necessity by him for that purpose. Even in such cases the law requires the party assailed to retreat as far as he conveniently or safely can to avoid the violence of the assault before he resorts to such extremities, or as far as the fierceness of the assault will permit him, for it may be so fierce and so imminent a;; not to allow him to yield a step without manifest danger of life or great bodily harm, and then in his defense, he may kill his assailant instantly. The jury must be satisfied from the evidence that the shooting of the deceased was necessary under the circumstances to protect the prisoner's life, or to protect him from such serious bodily harm as would give him ground for a reasonable apprehension that his life was in immediate danger, or it would be their duty to find him guilty of manslaughter.
 Verdict — Not Guilty. *Page 71